IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IOU CENTRAL, INC.                          :
d/b/a IOU FINANCIAL, INC                   :
                                           :
    Plaintiff,                             :
vs.                                        :     CASE NO.   1:20-cv-00453-JPB
MONTY LEE MERRILL,                         :
LAURA ANN MERRILL,                         :
CLEARWATER TRANSPORTATION, :
MANAGEMENT CO, LLC,                        :
CLEARWATER REAL ESTATE, LLC :
                                           :
    Defendants.                            :

## PLAINTIFF'S RESPONSE TO MOTION TO VACATE [DOC 9] CROSS MOTION TO ENFORCE CONDITIONS PRECEDENT; CROSS-MOTION TO VACATE ORDER GRANTING PRO-HAC STATUS AND TO STRIKE MOTION AND ANSWER.

Per Fed. R. Civ. P. 7, L.R. 7.1 and applicable law, IOU responds to the Motion to Vacate [Doc 9] of Defendants Monty Merrill [MLM] and Laura Ann. Merrill [LAM] Defendant Clearwater Transportation Management [CTM], a limited liability company whose member is MLM, a Texas citizen per §1332, as is Clearwater Real Estate, LLC. [CRE] No relief is sought as to Clearwater Transportation Ltd., [CTL], a company bankrupted by MLM.

IOU also moves to vacate the *pro-hac vice* Order and to strike the Motion to Vacate and Answer, per the conduct of Virginia counsel, practicing law in Georgia courts without a Georgia license, as he has done three times in as many months,

incorporating the Complaint. [Doc 1] It is time for this to end.

## STATEMENT OF FACTS: CORRECTED FROM THE INACCURATE VERSION IN THE MOTION

1.      The facts in the Complaint [Doc 1] are taken as true which Defendants failed to address and conceded in their Motion, which itself seeks to perpetrate a fraud on the Court by omitting significant details of the history of the loan transaction between the parties, as well as the continued efforts of Virginia counsel to practice law in Georgia without a license, purely for his self-profit.

2.      On 9/18/18, MLM submitted a Loan Application to IOU's website, at its GA office, for a commercial loan [Loan] for CTL, whose sole partner is CTM, for their alleged valid purposes as MLM is married to LAM, who had profits, ownership or other unlisted interests in CTL/CRM and in CRE, another company owned by MLM who knew of, consented to, benefitted from and ratified the Application and resulting Loan.    [Complaint ¶ 1]

3.      MLM sought the Loan for all Defendants who knew of, benefitted from, consented to and ratified the Loan, which satisfied their prior debts [the Prior Loans] which they incurred and were responsible, including two prior loans, one by IOU and one by another lender, in excess of $400,000, with the same or similar terms as the current Loan, into which IOU is subrogated. [Complaint ¶ 9]

2

4.      On 11/26/18, MLM electronically executed a Promissory Note to IOU, for CTL in the principal sum of $245,200 at IOU's GA office, by its website, in exchange for IOU's Funds of that sum and a loan guaranty fee, part of the principal, confirming the information in the Application and call, consenting to GA law and jurisdiction to enforce the Note, which includes a Security Agreement, by which the MLM Defendants as recipients of the Funds, encumbered and/or intended to encumber their real and/or personal property as collateral for the Loan, upon which IOU relied in approving the Loan, of which these Defendants knew, consented, benefitted and ratified, [Complaint ¶ 10-11]

5.      On 11/26/18, MLM electronically executed a Guaranty of the Note, at IOU's GA office, by its website, who, with the other Defendants, granted and/or intended to grant the same security interest in their property, proceeds and assets as CTL to guaranty the Note and Security Agreement of which Defendants knew, consented, benefitted and ratified, per the Prior Loans, who granted and/or intended to grant the same security interest in their property, proceeds and assets to guaranty Note/Security Agreement, who received and personally benefitted from the Funds and agreed to GA law and jurisdiction in the Guaranties, of which they knew, consented, benefitted and ratified. [Complaint ¶ 12-13, ¶ 17 and ¶24]

6.    Defendants received the Loan Funds from IOU which they were to repay daily under a Debit Agreement.  [Complaint ¶ 14-16]

7.    Defendants breached the Instruments shortly after receipt of the Funds, which they did not intend to or could not repay. [Complaint ¶ 18-20]

8.    Defendants are jointly severally liable for the Loan and Instruments as agents/partners, under alter-ego and piercing theories, who assumed the Loan, conspired to fraudulently induce IOU into closing the Loan, after which CTL was suddenly bankrupted.  [Complaint ¶ 21-23, ¶ 31]

9.    Defendants made no payments on this loan since CTL's bankruptcy in February 2019, who induced and encouraged IOU to confer the Funds, which they accepted, retained and are otherwise unjustly enriched at IOU's expense, absent their repayment, retaining their property assets and proceeds absent IOU's interests in them. [Complaint ¶ 26-29]

10.    IOU filed suit against Defendants on its claims, to declare their joint liability for the Instruments, secured by their property, assets and proceeds, reforming the Instruments to reflect their intended execution by all Defendants and equitable subrogation [Count I Complaint ¶ 33-48] judgment on the Instruments as to all Defendants [Count II ¶ 49-54] breach of fiduciary duty and unjust enrichment for their misconduct in rendering CTL insolvent and misusing its property, assets

and proceeds to benefit themselves, rather than IOU [Count II ¶ 55-61] quantum merit, unjust enrichment and money had and received if the other relief is denied [Counts IV and V ¶ 62-71] an equitable lien/mortgage on their property, proceeds and assets [Count VI: ¶ 72-76] a constructive trust if Count VI is not granted [Count VII ¶ 77-81] fees/costs if Count II is not granted. [Count VIII ¶ 82-86]

11.     IOU sued MLM in Cobb State Court, Case No. 19-A-2492 on 7/22/19, but only served him 2 months later after he evaded service, who then filed an answer and motion for arbitration another 2 months later, through the firm of Taylor, Duma and English, in October 2019. MLM then ceased communicating with his attorney by January 2020, preventing the state court case from advancing, which IOU then dismissed without prejudice on 2/4/20.

12.     On 1/30/20, IOU filed suit [Doc 1], naming Defendants for whom process issued, served with process on 2/6/20 [Doc 4-7] a week later. IOU had no duty to file the returns before moving for default, contrary to the frivolous argument on that 'issue' in the Motion. [Doc 9, p. 2] Defense counsel has a tendency to make arguments unsupported by legal authority, who tends to ignore the requirements for doing so under L.R. 83.1.

13.    IOU promptly sought and obtained entries of default on 2/28/20 as the Defendants did not respond to the suit, despite MLM's relationship with his state court attorney until February 2020: undisclosed in the Motion to Vacate

14.    On 3/5/20, Virginia Counsel wrote Georgia counsel [with whom he obtained *pro-hac* admission in 2 other Georgia cases since 12/19, stating:

> **From:** Michael Whitticar <mikew@novaiplaw.com>
> **Date:** March 5, 2020 at 5:29:11 PM EST
> **To:** Geoffrey Dureska <gdureska@dbllawyers.com>, Carter Brown <cbrown@dbllawyers.com>
> **Cc:** Paralegal <novaipoffice@gmail.com>
> **Subject: Fwd:  Merrill: Bankruptcy Documents**
>
> Dear Geoff:
>
> Monty Merrill asked me to forward these to you.  Apparently, Clearwater Transportation Management has been in bankruptcy since February of 2019.  IOU has been on the bankruptcy service list throughout the bankruptcy case. However, IOU apparently just decided to commit contempt of court and pretend that the automatic stay did not even exist.  Therefore, you need to consult with the bankruptcy trustee to determine who is the appropriate party to seek contempt of court and Rule 11 sanctions against IOU and possibly its counsel.
>
> Sincerely,  Michael C. Whitticar

15.    Aside from its defamatory statements, this email shows that Virginia counsel was retained with Georgia counsel before the answer deadline and communicated with MLM before that deadline, but did nothing to file a timely answer, contrary to the claims in the motion that Virginia Counsel had not yet

communicated with MLM. [Compare to Doc 9, ¶ 2 and Doc 9-2, ¶ 2]   The Defendants were clearly aware of that deadline as well.

16.     <u>Defendants did nothing to address this case until 10 days after the answer was due 5 days after the above email</u>, when Georgia counsel contacted IOU's counsel claiming that he alone was retained to represent Defendants and requested IOU vacate the entries of default, citing no legal grounds for them to do so. The Motion followed 2 days later: nearly two weeks after the answer was due.

17.     The Motion to Vacate is essentially one for summary judgment which ignores the entries of default, **<u>never explains the failure to file a timely response</u>** and disputes the involvement of Defendants with each other. [Doc 9-3 and 9-4] Defendants never address IOU's claims in their Motion. Laura Merrill attempts to dispute service but never discloses her alleged correct address. [Doc 9-2]

The Motion merely states: [Doc 9, p. 5]

"Fed. R. Civ. P. 6(b)(1) provides that a deadline which has passed may be extended upon a showing of good cause and excusable neglect, while Fed. R. Civ. P. 55(c) provides that the court may set aside an entry of default upon a showing of good cause. The fact that the return of service documents were not filed on  PACER until the day after the answer was due and the fact that Ms. Laura Merrill was never properly served constitute good cause and excusable neglect justifying the requested extension and an order setting aside the improperly obtained entry of default."

18.     There was no obligation for IOU to file affidavits of service, at least prior to the 90-day service period under Fed. R. Civ. P. 4(m). <u>There was nothing to stop MLM from advising his attorney when he was served so a response could be filed. MLM retained Virginia counsel before his answer was due: who did nothing as he admits. And again, Defendant Laura Merrill has not provided her allegedly correct service address to dispute her alleged improper service of process.</u>

19.     The Answer [Doc 9-1] is written in a peculiar question and answer format, contrary to Fed. R. Civ. P. 8, which frivolously denies nearly all averments of the Complaint. The Answer omits all defenses provided under Fed. R. Civ. P. 8 and 12, which does not address IOU's claims pled in law *and* equity, which do not require a signed contract for liability.  [Doc 9, p. 33-34] In fact the defense ignores Georgia law on the issues of aiding and abetting or conspiring to commit torts.

20.      Defendants failed to offer a reason for their failure to timely respond to this suit, to which they present no valid defense, whose motion should be denied and the *pro-hac* status of Virginia counsel terminated, who illegally signed the Motion and Answer prior to pro-hac admission as required by L.R. 83.1, which should be stricken.

21.     Virginia counsel is engaged in practicing law in Georgia without a license by seeking *pro-hac* admission in this case and others filed by IOU since

December 2019, *IOU v. Hoang*, Case No. 4:19-cv-00199, M.D. Ga. 2019 [See Doc 15-2, including an order admonishing Virginia counsel to comply Georgia law and properly move for pro-hac status] and see *IOU v. Trinity*. 1:19-cv-05786 (N.D. Ga. 2019] In all three cases, Virginia counsel provided legal advice, signed motions and pleadings without any legal right to so do: without disclosing all of the appearances in any of the cases. Virginia counsel also engaged in this practice in Texas and other jurisdictions where he is similarly unlicensed.  Virginia counsel should be held accountable for this conduct in which he has no right to engage.

22.    For these same reasons, Defendants cannot seek arbitration.

23.    The Motion to Vacate should be denied and Order for Admission of Virginia Counsel should be stricken, with the Motion/Answer, both signed by him.

## **MEMORANDUM**

Per Fed R. Evid. 201, IOU requests the Court to take judicial notice of the proceedings, pleadings, and exhibits referred above.

## I.    **Defendants Provide No Basis to Vacate the Defaults.**

The Defendants provide no basis to vacate the defaults whose motion and affidavit should be stricken. For example, the alleged defense of inadequate service upon Laura Merrill is unsupported by argument in the Motion and waived, particularly <u>as the entries of default resulted from the unexplained neglect in</u>

failing to timely respond to the suit as Defendants admit. ***Carlisle v. National***,
LEIS 88186 *16-17 (N.D. Ga. 2015) [defendant waived argument on alleged
improper service by failing to cite Fed. R. Civ. P. 4 or other authority that service
was improper, who conceded its failure to timely respond to the complaint was
neglectful] Laura Merrill also waived any argument that the Court lacks personal
jurisdiction over her due to this issue, which again is not briefed in the ***Motion***.
***Carlisle*** * 19 [personal jurisdiction defense on service issue was waived when not
raised in the initial motion to vacate entries of default]

  In this case, Defendants seek to vacate the defaults based upon 'excusable
neglect' without citing any authority who offer no reason for the failure to timely
answer as MLM was continuously represented by lawyers since February 2019.
IOU had no obligation to file the returns of service before moving for default, as
noted in Carlisle where the plaintiff filed the returns over two weeks after service
of process, with the defendant being held in default. ***Carlisle*** * 19.

   Defendants cite no authority from this Court on vacating entries of default,
only a passing blub of other authority [Doc 9, p. 8] This Court held a defendant (1)
did not show good cause for vacating a default by recklessly disregarding a service
date as Defendants did here, aware of the suit before the deadline to respond, as
was the defendant in ***Carlisle***. ***Id*** * 25-26 The Court also held (2) the defendant in

*__Carlisle__* did not act promptly to vacate the entry of default, which Defendants did not do here, until nearly *two weeks after* their answers were due. *__Id__* * 25-26. Defendants made no effort to vacate the defaults nearly a month after their entry – which resulted from the fact they retained Mr. Whitticar, an attorney not admitted in Georgia, who engaged in unauthorized practice of law by accepting their retainer and sought to initially litigate this case without local counsel contrary to L.R. 83.1, no who pled no meritorious defenses to this action, but instead offer unsupported, vague allegations in their answer, precluding relief from the defaults, standards unaddressed in their Motion, which they waived.

The Court also held that the defendant in *__Carlisle__* (3) did not raise sufficient facts in support of a meritorious defense, likely to be successful, legally cognizable, offer facts which if proven at trial would establish the defense, by a clear recitation of the facts, not a general denial. *__Id__* * 29-31 ["The defendant must assert specific facts supporting the existence of a prima facie meritorious defense as opposed to generally denying the allegations announced in the complaint."]. which the Defendants likewise fail to do here, who failed to present any argument to defend any specific Counts of the Complaint. Notably, Defendants never raised a substantive affirmative defense in their bare-bones, poorly pled unsupported answer, including the mandatory defenses in Fed. R. Civ. P. 8 and 12, which they

11

waived. See ***Rogers v. Allied Media***, 160 B. R. 256 (N.D. Ga. Bankr. 1993) [declined to vacate entry of default entered before Defendant its timely answer, *which failed to present any plausible excuse explaining the reasons for this delay*, *did not established that a meritorious defense to this action exists, particularly in view of the admission in the Answer that defendant owes the amount alleged by plaintiff in the complaint*. The Court previously declined to consider defenses of claims to which no argument is directed. ***Cadle v. Menchion***, LEXIS 142124 *17 (N.D. Ga. 2014) [court did not address *quantum meruit* claim which opposing party did not address in motion to dismiss] Any arguments to those claims were waived. The Court also held that the plaintiff in ***Carlisle*** (4) would be unduly prejudiced by the result of the delay in vacating the default, which would decrease its chances of collecting its debt from the defendant. ***Id*** * 48-49. MLM bankrupted the borrower-Business over a year ago, [Doc 9-5, 9-6 and 9-7] delaying IOU's debt since then, which is similarly prejudiced by vacating the entries of default in this case, particularly considering the dilatory tactics of MLM in the state court case.

## II.   <u>Defendants Waived Arbitration.</u>

An arbitration agreement is waivable, ***Citibank v. Stok & Assocs***., 387 F. App'x 921, 923 (11th Cir. 2010) (*per curiam*) See also ***Plaintiffs S'holders Corp. v. S. Farm Bureau Life Ins.***, 486 F. App'x 786, 790 (11th Cir. 2012) ("[A]bsent

clear and unmistakable evidence of an agreement to the contrary, disputes regarding conduct-based waiver are left to the courts to decide." "Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right." ***Morewitz v. West of England Ship Owners Mur. Protection and Indemnity Assoc.,*** 62 F.3d 1356, 1365 (11th Cir. 1995). A party waives the right to compel arbitration when they "substantially participate in litigation to a point inconsistent with an intent to arbitrate and participation results in prejudice to the opposing party." ***Id.*** at 1366. Prejudice exists "in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." ***Id*** Defendants waived enforcement of the arbitration clause in the Note/Guaranty by failing to respond to this suit, against which IOU incurred expenses by obtaining default. Furthermore, their "demand" for arbitration was not made within 20 days of service of this action per the Note, a contractual deadline which cannot be altered.  Defendants also filed an answer again waiving arbitration in this case and arbitration was notably waived by the year-long bankruptcy by the Bankrupt Business.

A district court is required to stay a pending suit when it is satisfied that *only* arbitrable issues remain. ***Klay****,* at 1203-04. As shown above, the claims as to Defendants are not subject to arbitration. Therefore, this case is not subject to a

mandatory stay for arbitration. A district court has *discretion* to stay non-arbitrable claims when arbitrable *and* non-arbitrable claims are advanced. "Courts generally *refuse* to stay proceedings of non-arbitrable claims when it is feasible to proceed with the litigation." ***Klay*** at 1204. "Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the non-arbitrable claims will depend upon the arbitrator's decision." ***Klay*** at 1204. Justice White admonished: "[O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed." ***Dean Witter Reynolds, Inc. v. Byrd***, 470 U.S. 213, 225, (1985) (White, J., concurring) (noting "[w]hile the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course").

However, as also detailed above, Defendants waived arbitration by failing to fulfill a condition precedent- bringing the Note current which MLM guaranteed, resulting in prejudice to IOU. Under the [Federal Arbitration] Act/Georgia law. "*[A]n arbitration clause of a contract may be repudiated, waived, or abandoned, by either or both parties to a contract. An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration*." ***National***

*Fidelity v. Lane,* 398 S2d. 775 (Ga. App. 1990) [court determined a party waived arbitration by not obtaining expert medical determination required prior to arbitration] *citing* **McCormick-Morgan v. Whitehead**, 345 S.E.2d 53, 56 (1986) [court determined electric company negotiated final contract with contractor and waived right to arbitration]  S*ee* **Klopp v. Benchmark**, LEXIS 188108 * 7-8(S.D. Fla. 2015) [court could determine if conditions precedent to arbitration were met] *See* **Freeman v. Smart Pay Leasing**, Case No. 18-10380 [unpubl] (11th Cir. 2019) [party waived arbitration by failing to fulfill condition precedent of paying filing fee. *See* **S&H Contractors v. AJ Taft**, 906 F.2d, 1507, 1514 (11th Cir. 1990) [corporation waived arbitration by not being properly organized as required by contract and participated in litigation before demanding arbitration, holding: "a party waived its right to arbitrate if "under the totality of the circumstances, the . . party acted inconsistently with the arbitration right and, in so acting, has in some way prejudiced the other party."]  Arbitration should be denied for Defendants for failing to fulfill the conditions precedent of the Note and Guaranty [the terms of which they completely dispute] and otherwise waiving arbitration, such as not bringing the Note current, even 21 days or more after service of this suit.

## III.    Arbitration Parties Should be Ordered to fulfill Conditions Precedent.

The Note [Doc 9-10] contains the following language:

15

**Limitations for Submission and Conducting Arbitration.** The option of a party to this Note to submit any particular Dispute to arbitration shall

expire and be waived with respect to such particular Dispute:

(i) on the 20th day after the later of service of the summons and complaint or the service of any amended complaint filed in such civil action, with respect

any party to the Note that is named as a defendant in such civil action involving or relating to such Dispute, or

(ii) on the 20th day after the later of service of any responsive pleadings to the complaint or any later filed counterclaims or third-party claims asserted in

such civil action with respect to the party to the Note that initiated a civil action involving or relating to such Dispute.

The unconditional payment obligations of the Borrower set for in Section 13 of this Note shall be a condition precedent to the option to submit any Disput[e] to arbitration and to continue any arbitration after submission.

Of course, the Business is in bankruptcy which cannot invoke the Note, but

the Note still binds MLM per the Guaranty [Doc 9-12] which states:

"Each party will pay its own filing, administration, service or case management fees in relation to the arbitration." [Guaranty ¶10]

When read together, the Note and Guaranty require MLM and any other

Defendants to (a) seek arbitration *within 20 days after service of the Complaint* and

(b) *advance* costs of arbitration *and* (c) bring the Note current as (d) *conditions*

*precedent* to arbitration.   Alternatively, any parties to arbitration should fulfill the

conditions precedent to arbitration under the Note and Guaranty.  **_Freeman_**- and

**_S&H Contractors_** *supr*a. Therefore, if Defendants are parties to arbitration ordered

with IOU then they should be ordered to (a) advance half of their costs [$1,500.00]

16

in a 3-party JAMS arbitration] and (b) bring the Note current (c) within 14-days of an order granting the Motion, subject to these conditions. Otherwise, any claim for arbitration should be denied with prejudice.

## IV.   The Pro-Hac Vice Order of Virginia Counsel should be Vacated and the Motion and Answer Stricken.

As shown here, Virginia Counsel is on his third *pro-hac* admission in a Georgia Court in three months, who was apparently practicing law here without a license before and after appearing in this case.

L.R. 83.1 states in part as follows:

**B.** *Permission to Practice in a Particular Case.*

**(1)** Eligibility and Procedure. A non-resident attorney who is not an active member in good standing of the State Bar of Georgia, but who is a member in good standing of the bar of any United States court or of the highest court of any State must apply in writing for permission to appear *pro-hac vice* in any case in which the attorney will appear in Court on behalf of a party, apply for fees, sign his or her name to a document filed with the Court, or otherwise substantially participate in preparing or presenting a case.

**F. Attorney Discipline**

(14) Unauthorized Practice. Any person not admitted to the bar of this Court or any attorney disbarred or suspended by this Court who exercises any of the privileges bestowed upon members of this Court's

bar or pretends to be entitled to such privileges will be adjudged guilty of contempt and may be subject to other discipline by the Court.

See also O.C.G.A. §15-19-51 stating in part:

**Unauthorized practice of law forbidden**
**(a)** *It shall be unlawful for any person other than a duly licensed attorney at law:*
**(*1*)** *To practice or appear as an attorney at law for any person other than himself in any court of this state or before any judicial body;*
**(2)** *To make it a business to practice as an attorney at law for any person other than himself in any of such courts*;
**(3)** To hold himself out to the public or otherwise to any person as being entitled to practice law;
**(4)** *To render or furnish legal services or advice*;
**(5)** To furnish attorneys or counsel;
**(6)** To render legal services of any kind in actions or proceedings of any nature;
**(7)** To assume or use or advertise the title of "lawyer," "attorney," "attorney at law," or equivalent terms in any language in such manner as to convey the impression that he is entitled to practice law or is entitled to furnish legal advice, services, or counsel; or
**(8)** To advertise that either alone or together with, by, or through any person, whether a duly and regularly admitted attorney at law or not, he has, owns, conducts, or maintains an office for the practice of law or for furnishing legal advice, services, or counsel.
**(b)** Unless otherwise provided by law or by rules promulgated by the Supreme Court, it shall be unlawful for any corporation, voluntary association, or company to do or perform any of the acts recited in subsection (a) of this Code section.

The Court may   strike or disregard documents resulting from the unauthorized practice of law, as in ***Disabled Patriots of Am v. HT W. End*** LEXIS 9227 (N.D. 2006) detailing L.R. 83.1, requiring parties in cases before the Court to be represented by Georgia counsel or Georgia local counsel with an out-of-state

attorney, admitted by *pro-hac vice* status. The Court struck part of a fee petition for

plaintiff in this case, finding that plaintiffs' out of state attorneys failed to obtain

*pro-hac vice* admission, finding as follows:

> "The Court agrees with defendant under the circumstances, John and Lawrence Fuller [plaintiffs' attorneys] should have sought permission to practice in this district *pro-hac vice.* Their failure to do so certainly violated the local rules, and likely violated Georgia's Rules of Professional Conduct prohibiting the unauthorized practice of law in Georgia." ***Id*** *5--6

> "Plaintiffs' attorneys offer a number of reasons why they failed to seek admission *pro-hac vice*, none of them persuasive. (Pls.' Resp. to Def.'s Mot. To Strike ("Pls.' Resp.") [21].) Primarily, plaintiffs argue that they interpreted the local rules only to require *pro-hac vice* admission before an actual "appearance" in court. (*Id.* at 2.) Because neither John nor Lawrence Fuller appeared in court, plaintiffs contend, they were not required to obtain *pro-hac vice* admission. *(Id.)*

> The Court rejects plaintiffs' interpretation of the local rule. By its terms, Rule 83.1 governs the "admission to *practice* before the Court." N.D. Ga. R. 83.1 (emphasis added). Rule 83.1(B), which applies specifically to non-resident attorneys, provides for "permission to *practice"* in particular cases. *Id.* (emphasis added). Courts have repeatedly held that the "practice" of law is not limited to appearing in court. *See **In re Loveless Babies***, 315 B.R. at 792 (holding that Chicago attorneys who never made an appearance in Georgia court were nevertheless "practic[ing] law in Georgia"); ***In re Peterson***, 163 B.R. 665, 672 (D. Conn. 1994) (recognizing that the practice of law "includes giving legal advice and drafting documents regardless of whether it occurs in a court of record'"); ***Ramirez v. England***, 320 F.Supp. 2d 368, 377 (D. Md. 2004) (stating that "the very acts of interview, analysis and explanation *of* legal rights constitute practicing law"). ***Id*** *6-7

"Moreover, Local Rule 83.1(B) is the mechanism by which the Court obtains the authority to monitor, and discipline if necessary, non-resident attorneys practicing before it. *See **Smith v. Homes Today Inc. (In re Smith)***, 306 B.R. 5, 7 (M.D. Ala. 2004) (noting that non-resident attorney became subject to the forum's rules of professional conduct upon his admission *pro-hac vice)*; ***Adams v. BellSouth Telecomms., Inc.***, 2000 U.S. Dist. LEXIS 22255, 2000 WL 33941852 *4 (S.D. Fla. 2000) (citing authority for imposing discipline on an attorney admitted *pro-hac vice?* ***To that end, Rule 83.1(C) provides: "All lawyers practicing before this court shall be governed by and shall comply with the specific rules of practice adopted by this court and, unless otherwise provided, with the Georgia Rules of Professional Conduct." N.D. Ga. R. 83.1(C)**. [emphasis added]* Plaintiffs' interpretation-which would subject attorneys to these rules only when they physically "appear" in a courtroom-would seriously hinder the Court's ability to monitor and discipline non-resident attorneys who are conducting litigation in this district." *Id* *7-8
......

"Regardless of the varying requirements for admission to the federal courts in other states, if the attorneys intend to practice in the Northern District of Georgia, it is incumbent upon them to become familiar with the local rules that govern the federal courts in this district. ***Furthermore, the text of Rule 83.1 is fairly straightforward: non-resident attorneys who are not members of the Georgia bar must apply for pro-hac vice admission before they practice law in Georgia. N.D. Ga. R. 83.1(B). Practicing law is not limited to appearing in court, but includes all of the professional duties that lawyers typically perform, such as advising clients and drafting court documents.** ). [emphasis added]* John and Lawrence Fuller clearly were practicing law when they: drafted the Complaint and other court documents, evaluated and analyzed expert reports, provided legal advice to plaintiffs, and negotiated and drafted a Settlement Agreement." (*See* Pls.' Appl. [13] at Ex. 7.) *Id* *8-9

The Court may strike documents under its inherent authority below:

"A court may impose sanctions for litigation misconduct under its inherent power. The Court's inherent power derives from the court's need to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. This power, however, must be exercised with restraint and discretion. The key to unlocking a court's inherent power is a finding of bad faith. . A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order.. The dismissal of a party's complaint or answer, *or striking its defenses, as a sanction...is a heavy punishment, appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders*." **Forsberg**, 694-698 *citing* **Eagle Hosp. Physicians v. SRG Consulting**, 561 F.3d 1298, 1306 (11th Cir. 2009) [affirmed inherent power to strike defendants' answer/counterclaims for illegally using privileged information; *see* **Eagle Hospital v. SRG**, LEXIS 63442 (N.D. Ga. 2007)

Virginia Counsel had no right to represent the Defendants by advising them or signing the Answer and Motion before his admission including making false statements about IOU's counsel, which is the unauthorized practice of law. The Court should vacate the Order for *Pro-Hac Vice* Admission of Virginia Counsel and strike the Answer and Motion resulting from his unauthorized practice of law. The Answer may also be stricken under Fed. R. Civ. P. 12 (f) **Tomason v. Stanley**, 297 F.R.D. 541, 547-549 (S.D. Ga. 2014) [struck unsupported defenses of conditions precedent, liquidated damages and sanctions]

## CONCLUSION

WHEREFORE, Plaintiff respectfully prays for the following relief:

(a)     Deny the Motion to Vacate;

(b)     Strike the Motion and Answer and Vacate the *Pro-Hac Vice* Order;

(c)    Alternatively, Defendants be ordered to fulfill conditions precedent to arbitration: [if they have standing to seek arbitration]

    (1)    Advance half of their costs [$1,500.00] in a 3-party JAMS arbitration; and

    (2)    Bring the Note current.

    (3)    Otherwise, the Motion should be denied with prejudice.

(d)    For all other just and proper relief.

## CERTIFICATE OF COMPLIANCE

Per L.R. 5.1(C), I certify this document was prepared per L.R. 5.1(B) in Times Roman 14-point typeface.

## CERTIFICATE OF SERVICE

I certify a precise copy of this document was filed ECF on the below date, sending ECF notice to opposing counsel of record.

Respectfully submitted this 27rd day of March 2020.

By:    */s/Paul G. Wersant*
    Paul G. Wersant
    Georgia Bar No. 748341
    3245 Peachtree Parkway, Suite D-245
    Suwanee, Georgia 30024
    Telephone: (678) 264-2358
    Email: pwersant@gmail.com
    Attorney for Plaintiff
    File No. 98052 and 109899